OPINION OF THE COURT
Robert C. Mulvey, J.
*633 The petitioner seeks a judgment pursuant to article 78 of the Civil Practice Law and Rules annulling and reversing the respondent’s refusal to comply with his request for a document under the Freedom of Information Law (Public Officers Law art 6) (FOIL).
The respondent, Southern Tier Economic Development, Inc. (STED) contends that it is not an agency subject to FOIL.
Background
The respondent is a not-for-profit corporation formed in 1995 with the following purposes:
“To relieve and reduce unemployment, to promote and to provide for additional and maximum employment and to better and maintain job opportunities for the purpose of aiding the communities located in the Southern Tier of New York by attracting industry to the community and by encouraging the development of, or retention of, an industry in the community, and to lessen the burdens of government and to act in the public interest, thus performing an essential government function.
“The lawful public or quasi-public objectives for which the Corporation is to be formed are to benefit the residents and communities of the Southern Tier of New York by expanding economic and employment opportunities.”
Three members of STED’s board of directors are government officials (the Chemung County Executive, the Mayor of Elmira and the City Manager of Elmira).
On November 24, 1999 the respondent entered into an agreement with the City of Elmira and Elmira Downtown Arena, LLC (EDA) for the development of lands in downtown Elmira as a sports and entertainment complex. Title to the land was transferred to the respondent by the Chemung County Industrial Development Agency (CCIDA). This land had been sold to CCIDA by the City. EDA is a private entity. EDA agreed to manage and operate the facility. Financing for the project was comprised of grants from the Empire State Development Corporation, a loan from the United States Department of Housing and Urban Development, a loan from the City to the respondent, and loans from EDA and funds borrowed by EDA. The two mortgages on the property are held by the City of Elmira and EDA.
The development agreement specifically states that “STED is carrying out the Project as a private party and STED’s contracts *634 and agreements with respect to the Project shall not be subject to public bidding or other restrictions generally applicable to public works projects.” (Para 4.6.)
EDA’s management agreement with the respondent required an audit to determine whether EDA owed monies to the respondent. EDA is required to make annual management payments to STED if net operating income exceeds $800,000. The purpose of the audit was to determine whether that figure had been reached. The cost of the audit was borne by the City of Elmira pursuant to paragraph 7.1 of the development agreement, which provides that “the City shall pay STED the reasonable administrative and operating expenses incurred by STED in the supervision, enforcement and performance of its obligations and duties under this Agreement and the Management Agreement, and any such payments shall be added to the City/STED note.”
In turn, STED is obliged to “pay to the City an amount equal to all Annual Management Payments . . . paid by EDA to STED under the Management Agreement” (para 3.4). Paragraph 3.4 also provides for advance approval by the City if STED seeks to deduct administrative and operating expenses from the management payments.
Thus the outcome of the audit does bear on the rights and obligations between STED and the City. However, the development agreement does not set forth any obligation on the part of STED to furnish any records, including audit reports, to the City.
The petitioner sought a copy of this audit by request dated April 7, 2004. The request was denied on April 12, 2004. This denial was appealed on May 3, 2004 and denied on May 7, 2004.
Discussion
. The question presented is whether STED is an agency under the definition set forth in section 86 (3) of the Public Officers Law. That section defines an agency as “any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof.”
The City has invested its own money with STED interest free and seeks repayment over time. The only return sought by the City on its investment is the economic development of downtown Elmira.
*635 In holding that a similar entity was such an agency, the Court of Appeals in Matter of Buffalo News, Inc. v Buffalo Enter. Dev. Corp. (84 NY2d 488 [1994]) noted that the agency’s purpose was “undeniably governmental” since it was created to “attract investment and stimulate growth in Buffalo’s downtown and neighborhoods”; that it was required to publicly disclose its annual budget; that the budget was subject to a public hearing and submitted with its annual audited financial statements to the City of Buffalo for review; and that the agency described itself as an agent of the City of Buffalo (id. at 493). The entity in that case received all of its funding from a federal agency (id. at 490).
Here, although the respondent performs a governmental purpose by fostering development, it is not bound to publicly disclose its annual budget, to conduct public hearings thereon or to submit financial statements to the City. There is no evidence that STED has ever acted as or held itself out as an agent of the City. Its funding is a combination of public and private investment.
Although several public officials sit on STED’s board of directors, there is no evidence of any financial control exercised by the City over STED. Such distinctions were sufficient to exempt a similar entity from FOIL in Matter of Farms First v Saratoga Economic Dev. Corp. (222 AD2d 861 [3d Dept 1995];* see also, Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello, 3 Misc 3d 1109[A], 2004 NY Slip Op 50527[U] [Sup Ct, NY County 2004]).
For these reasons the court finds that STED is not an agency within the definition set forth in section 86 (3) of the Public Officers Law.
The petition is denied.

 In Farms First, the not-for-profit corporation contracted with the County to promote development and was paid by the County for its services; 50% of its revenue was derived from the County and the balance from other municipalities and private clients. (Id.)